Let's, I think, try to take the two cases separately, and unless somebody has a better suggestion, have an opening reply and rebuttal on one case and then on the other.  Your Honor, you want to take the cases together? That's fine with me. I would just ask the court to allow me a total of 10 minutes, 8 for the argument and 2 reserved for rebuttal on my issue involving Mr. Rico. And then my attorney will argue the issue. Your Honor, that's fine. Okay. So you'll go first and then the government, then your rebuttal, and then we'll start again with your counsel. I just have a moment to get a little bit of water. Good morning, Your Honors. May it please the court, my name is Jack Bultax. I represent the defendant appellate in this case, David Rico. The first issue I'd like to address is the terminology in the statute involving the reasonable opportunity to observe and whether or not it is vague. The court gave no clarification to the terminology reasonable opportunity to observe. And merely because the statute has the words reasonable in it and reasonable is used in other statutes which have been determined not to be vague, doesn't necessarily mean that it's vague in this case. How does this matter for your client? It seems by most any definition, his experience would have given him a reasonable opportunity to observe. Well, the question on reasonable opportunity to observe is whether or not, as the Robinson case indicates, it creates strict liability. Or whether or not, as Mosey claims, it just merely directs you to go to the second prong, which is reckless disregard. Well, that issue I understand, but you're starting talking about vagueness as if there's a First Amendment kind of void for vagueness challenge that applies here. No, it's an applied challenge, Your Honor. It's as applied. So how is it vague as applied to him? The meaning of the term now, reasonable opportunity to observe, how does that not fit him? Because the jury was basically told that it was strict liability, and it isn't. If he had a reasonable opportunity to observe, my position is that that reasonable opportunity gave him the ability to discern the victim's age. The statute itself is not a strict liability statute which says he's guilty just because he had that reasonable opportunity. Well, it may be if he had the reasonable opportunity and did all the other things that create a violation of the statute. I mean, the argument there is whether the instruction given by the court giving these three alternatives, is that consistent? Does that flow from the statute or not? That argument I understand. The vagueness part I really don't. Well, what does reasonable opportunity mean? The jury wasn't told what it meant, so... And how does it matter for your client? Because what your client had by way of experience with this person would seem to me to be a reasonable opportunity by most any standard. That's correct, but did he know? The answer is no. Should he have known? He didn't know he had a reasonable opportunity to observe her? Of course he knew that. He knew he had a reasonable opportunity to observe, but that did not put him in a position where he was able to discern the age of the victim. Because look what happened with the jury. They were given the reasonable opportunity to observe language, which I objected to in the instruction. At least as to charge one, I objected to that. The jury comes back two minutes after two and says to the judge, you know, do we have to find knowledge or is it sufficient enough that the victim is 18 and that fact is enough? And the jury is basically charged again and given the reasonable opportunity to observe, and then comes back within four minutes and says he's guilty. It's clear what happened was they found under the reasonable opportunity to observe without any discernment to them as to what that meant. Did it mean he was strictly liable or did it mean that there must be factors that he should have considered or did consider? Their question wasn't what's the meaning of reasonable opportunity to observe.  The question was whether that's enough under the statute. Well, the question, if that's the question, the answer is my position that Mosey controls and that's not enough under the statute. Well, then take up that issue and tell me how it is. I mean, look at the statute. Look at subsection C. I understand. Well, let's look at subsection A and B first. Subsection A and B sets forth the elements of the crime. Element number one is that he knew that the victim was under the age of 18. Element number two is that he acted in reckless disregard of the age of the alleged victim, James C. in this case. Then the, and it gives it in the alternative, one or the other. And then it says if it is shown that there was a reasonable opportunity to observe, the government does not have to prove knowledge. Does that mean that reasonable opportunity to observe is another element? It was not listed in the disjunctive. It didn't say reasonable opportunity to observe or reckless disregard or. Well, if you go back to A, the knowing or in reckless disregard of the fact applies more than to just the age factor. And so. It applies to two factors, but I'm just focusing on the age factor. Sure, but that may explain why Congress wound up with this odd construct. But by your reading, I don't see how you don't negate subsection C from the statute. You just read it right out. Because it doesn't mean you read it right out because it wasn't given into the disjunctive in terms of how it was set up. By your interpretation, how would the statute be different at any respect if subsection C wasn't there? If subsection C wasn't there, you would have to, the government would have to prove knowledge. If subsection C. Knowledge or reckless disregard. Those two are still there. It's still there, but if the government proves C, that doesn't mean it doesn't have to prove reckless disregard. Why not? Because. Because by that reading, C just drops out. C doesn't mean anything by your reading. No, C does mean something, Judge. What does it mean? It means that you look at the reckless disregard and say, did the defendant have a reasonable opportunity in light of the reckless disregard? A reasonable opportunity to observe the victim such that he discerned that she was or was not under the age of 18. You don't need C. You just treat reckless disregard as swallowing C. You don't need C under your reading of it. But under your. But what if, but by the alternative reading, C means something. If C was intended to be strict liability, which is apparently what your indication is. Looks to me like that's what it says. Well, then, well, a plain reading, one can't conclude that because look at these statutes that it was supposed to comport with, 2241 and 2243. One of those statutes doesn't have strict liability in it. One of them says that you have to prove recklessness or knowledge, and then you go to the issue of whether or not the defendant had knowledge. And that is something the prosecution doesn't have to prove, but the defendant does have to prove by a preponderance of the evidence. So it's an affirmative defense. The other statute specifically says that knowledge is not an element that has to be proved and provides no, no circumstance by which the defendant can introduce evidence and claim that he didn't know. It's a strict liability statute. This appears to me to be a hybrid, and as such, it doesn't make sense to me. And it didn't make sense to Mosley, which is why Mosley concluded that you have to show reckless disregard and you have to show a reasonable opportunity to observe. Because what is reckless disregard? Having facts before you and recklessly disregarding those facts. So C is simply redundant of reckless disregard. I believe that it is. I believe that it is. Well, isn't that a problem? Because we're not supposed to disregard subsections as if they're surplusage. It's not surplusage. It's just qualification of what element 2 is, which is the reckless disregard. And that's what Mosley appears to say. Because if you say it's strict liability like Robinson, the simplest thing, Your Honor, for the legislature to have done would have been simply to say, hey, strictly liable. It doesn't matter whether you have knowledge or not. It doesn't matter whether you have reckless disregard or not. If you had a reasonable opportunity to observe, unqualified, which I disagree with, but if it's unqualified, you're guilty. So why didn't the legislature simply say that if that's what it intended that particular section? Because there's a second fact in A. You just acknowledged that A covers two facts. Age is one. There's another one. And as to the other one, it's not strict liability. As to the other one, the requirement for knowledge or reckless disregard still applies. I understand that. So it's not strict liability. Well, I believe that it was attempting to qualify two things. Number one, when knowledge didn't become an issue. And number two, what reckless disregard was. The government, Your Honor, concedes to some extent my argument because on page 19 and 20 of their brief, they basically state that it means a fair chance to discern the victim's age. If it was strict liability, why would they contend that it means a fair chance to discern the victim's age? In responding to my argument about whether reasonable opportunity was vague or not vague in terms of the terminology, they specifically went to that and they said, wait a second, Mr. Bultak has shown us all of these possibilities. So it was proof just by Mr. Bultak saying it that a person of ordinary intelligence, because he's a person of ordinary intelligence, would be able to figure this out. And what they go on to conclude based on what they say is that it is not a strict liability means it's a fair chance to discern the victim's age. If that's the case and if that's what they're saying and if that's what the statute means, then that's not strict liability. Okay, it's not strict liability. I'll take their position for the moment. If it's not strict liability, how exactly does that help you? Because... In that sense, it's not. They're not saying if the person is under 18, that's it, end of question. There are three alternatives in the statute, knowledge, reckless disregard, or reasonable opportunity to observe. How it helps me is the court would not tell the jury that it meant a fair chance to discern the victim's age. It gave them an unqualified if he had a reasonable opportunity to observe. So that means if he saw her... So now we're back to vagueness. Is there any doubt that your client had a fair opportunity or whatever phraseology you want to use, had that opportunity to discern her age? No. No doubt whatsoever, is there? No, there's a doubt. What's the doubt? He's known her for half her life. He knew who she was. He did not associate with her. He never went to birthday parties. He had specifically indicated to the co-defendant and the victim that he did not want to associate with anyone under the age of 18. He was told, in order so that Ms. Fultz-Kelly could carry out this particular plan, he was told that she was over the age of 18. If you recall, what Ms. Fultz-Kelly said is even though Mr. Rico, my client, was present, he was gone most of the time working, and she did not see a lot of him. There is no indication in terms of the circumstances here that merely from observing this Jane Seeg, how does merely observing somebody who was 17 years and 2 months old tell you that that person is over the age of 18? In this day and age, with the way that young people are striving to become adults before their time, the way they dress and the way they act, and many times their rebelliousness, how can anyone tell the difference between a 17-year-old and 18-year-old? What if, Your Honor, she was 17 years and 363 days old? Would he have a reasonable opportunity to know that she was less than the age of 18? Well, he'd have ample opportunity to inquire and find out. And that may be where the strict liability comes in. That is, puts the onus on the actor, who in this case is the defendant, to find out and to be right. But that's not what the statute says. It puts no onus on him. It says if he had knowledge, if he had knowledge, where's the onus? If he had knowledge, if he had acted in reckless disregard, or if he had a reasonable opportunity. But there's nothing in the record to show that he had that reasonable opportunity or anything that Jane Seeg did would indicate that she was less than the age of 17. I mean, she was trying to do everything to become an adult. She was using drugs. She was hanging out with older people. She had run away from home to be independent. So that's my point here. I think that's where the confusion in the statute is inherent. If it's supposed to comport with either 2241 or 2243, it does neither. Because it doesn't have a situation where the defendant has an affirmative opportunity to prove by a preponderance evidence that he did not know. And it is not listed as being strict liability. And that's where the confusion comes in. And that's why I believe the Mosley Court was right. Both the reasonable opportunity to observe and the reckless disregard have to be proven. In regards to... Whether you have time is speculation on your part. I mean, you're eating into the total amount of time available. I apologize, Your Honor. You're into the 20. You're beyond your 10 minutes by a long shot. According to this, I have 5 minutes and 50 seconds. Out of 20. It started from 20. Oh, I'm sorry. I would submit at this point then. Good morning, Your Honors. May it please the Court. Mark Rahe for the United States. I think we have to keep these first and two issues clear. The first issue, as my opponent has pointed out, is simply whether, as applied, reasonable opportunity was vague on the facts of this case. He doesn't appear to actually have any problem with the language reasonable opportunity to observe. More, it seems, he ties it into the circuit split. But our position is, just because... There's no question those terms are not defined by the statute. But just because terms are not defined by statute does not automatically make them vague. The term reasonable or variance thereof has been used in the law for decades. In fact, all the way back to the founding. It's in the Fourth Amendment. I think Judge Clipton honed right in on it. The question is, on the facts of this case, did the defendant have a reasonable opportunity to observe? Now, Mr. Bultax just made a nice argument, which probably would have been a nice jury argument, if the question were sufficient to see the evidence. But it's not. The only question is whether he had fair notice that his conduct would fall within the statute. And as I tried to point out in my brief, I think he kind of bleeds the issue. The law is clear that Congress is not obligated to provide a mistake of age defense. It's not a constitutional requirement. Congress can choose to do if it wants. And we cited examples from the federal code where it's done that. It didn't do that here. Congress has the power to define the elements as they see it. Just as a matter of overall fairness, maybe I used the word strictly liable too loosely in my brief. This statute from the get-go is not strictly liable. It's not strict liability. You have to prove that they knowingly maintained, recruited, and tied somebody for the purposes of prostitution. That's already one solid mens rea requirement. We are only talking about whether there has to be another level of knowledge for the age of the victim. As we pointed out, there is an entire body of jurisprudence, and it's evident in the legislative history of this statute. 1591C came about as part of the William Wilberforce Act of 2008. Congress specifically cited in there to the United States Supreme Court case of excitement video footnote 2, where they talk about in the context of production of child pornography, it makes sense, this is a quote, footnote 5, it makes sense to impose the risk of error, end quote, on the producers of child pornography because they necessarily have to confront the victim. And also in that legislative history, Congress cited 18 U.S.C. 2241D, which is aggravated sexual abuse of a minor. It's for minors under 12. That specifically says that you don't have to prove that the victim knew, or that the defendant knew the victim was under 12. Here, there's nothing unfair in finding that this reasonable opportunity to observe is a third option as to the victim's age, and there's no question on the facts of this case that the defendant had that. As Judge Clifton pointed out, I mean, it was undisputed that this defendant knew the victim for the overwhelming majority of her life. And all of that time was when she was a juvenile. Supplemental excerpt of record, pages 339 to 40, the victim testified that the defendant was one of her brother's closest friends. So you have that kind of longitude that goes back years. Then two months before the charged crime, again, the victim testifies without dispute. She started, quote, hanging out closely with the defendant, going to the lake, shopping, doing drugs. And then finally, during the charged offenses, which is from March to April in 2012, the defendant is living hotel to hotel with the victim. Every one of these periods of time gave him a reasonable opportunity to ascertain. Why is that different from reckless disregard? You know, I honestly don't know, Your Honor, but I do know that it has to be, as you pointed out, it's something that they made that's separate. And it has to be given meaning, otherwise it just becomes redundant. The way the jury reacted here makes it appear, or at least it's an inference, that they're sitting there looking at the instructions and trying to figure out knowledge, reckless disregard, and then there's this other alternative. And they ask a question, following which they reach a verdict really quickly, suggesting that maybe there was a question in their mind with regard to reckless disregard, but reasonable opportunity to observe is a slam dunk, so they got that answer, so bingo, we got a conviction out. Does it add something to, which leads me to infer the jury concludes, okay, this is an easier route, we'll take this route. But this starts to back up into his vagueness argument. Somebody reading the statute, can they properly understand that that is, in fact, an alternative when subsection A lists A and B, lists the knowing, lists the reckless disregard, and then through the back door you get this third alternative? Well, I would say, I believe it's Boyce v. Boyce Motor Lines. We cite a case, a defendant who goes perilously close to the line runs the risk that he may step over. Here, this defendant has to knowingly be engaging in pimping and promoting prostitution. To the extent that he may try to draw lines as to say, well, maybe I'll be strictly liable, maybe not, we would submit, first of all, that that isn't the kind of due process concern that the Fifth Amendment is concerned about. Because even in cases like Colton v. Kentucky, the Supreme Court said, this is only based on a rough idea of fair notice. There is a mens rea requirement here. It's not strict liability in the classic sense. If you have no contact whatsoever with the victim, and you could fairly say, I thought it was 25, whatever. So there's some requirement, and I take it your characterization is that it's an assumption of risk, if you have the opportunity to observe. That's sort of, you know, I've talked about making subsection C surplus, but the reverse is sort of true, too, because you've read subsection C the way you're suggesting. What's reckless disregard got to do with anything? Could you possibly have reckless disregard without the reasonable opportunity to observe? I believe you can, and there's a case, I believe it's Fifth Circuit, PHEA, P-H-E-A. They talk about some hypotheticals. Like, imagine somebody who, you know, is a professional pimp, and basically somebody comes to him and says, hey, I just saw somebody outside the high school who looks pretty hot. I think we can make her prostitute. That defendant has never observed that victim. But then you might be able to argue that based on that, he still was aware of something that should have put him on notice, and therefore he recklessly disregarded. So I think all I can do is try to come up with a hypothetical to explain where one context may not meet the other. But I think it's also clear from the legislative history that Congress was trying to expand the scope of protection. And, you know, it's been true under the law that child, minor victims of sexual activity have always been given warranted protection. And when Congress, you know, comes up with this in 2008, adds 1591C, and then just May 29th of this year, as we pointed out in our Rule 28J letter, it is now clear. I know my opponent submitted a response to my 28J quibbling with the legislative history. One thing he cannot dispute, and I invite him to try on rebuttal, Congress has now said that exactly what Judge Houston did below is the right interpretation of the law. Because what Judge Houston did was tell the jury, you have three options with cyan or as to the victim's age. And now we know that that is the law. So it seems highly untoward for the defense now to come in and say somehow that the district court was wrong. And in Section 108C of that public law, 114-22, Congress expressly said that its intent was to clarify the scope of conduct. And as we pointed out in authority in that 28J letter, when Congress says that it's clarifying the scope, it's saying what the statute has meant all along. So here, one thing I also want to touch on too, Your Honor, you asked about the jury question. I mean, I'm not a trial guy anymore. I've been doing appeals for a while. But I think most people would say even if the trial mavens, it's kind of pure speculation to read too much into what jury notes are. I mean, here, when they gave those notes, it's not like the district court suddenly said, hey, there's something brand new I'm going to tell you about, and I'm really going to talk to you about 1591C. He said, no, proof that the victim is under 18 isn't enough, period. To convict, you have to find one of the following three options. And he didn't give one any more prominence than the other. And so our question here or our position is on the second issue is whether, in fact, the district court correctly instructed the jury. Robinson, the Second Circuit, in a very thorough opinion, explained all the reasons why, not just the rule against surplusage, but also reading the law consistent with other statutes dealing with child sex abuse, looking at cases, seminal cases like excitement video in 1994 where the Supreme Court expressly said it's okay to put the onus of the risk on producers of child pornography because they necessarily confront somebody. If that's the legislative history for 1591C, it seems pretty clear that what they're saying is because if you can prove, as the government, a reasonable opportunity to observe, therefore it's not unfair to put the onus on the defendant to have to go a step further. And I believe... You've used ten minutes already. Do you want to save your next ten for the other case? Absolutely, Your Honor. Good morning, Your Honors. May it please the Court, Laif Clevin for Appellant Jack Bultax. Mr. Bultax was wrongfully sanctioned by the district court, and the district court abused its discretion in imposing sanctions for three reasons. First, Mr. Bultax had a good faith basis for issuing the subpoena in this case. Second, the district court wrongfully ruled on the motion to quash the subpoena. Had the district court correctly ruled on the motion to quash, there would have been no basis for the sanctions. And third, upholding sanctions against a defense attorney who zealously advocates for his client sets a dangerous precedent that will have a chilling effect upon the defense bar and temper advocacy. Critical to sanctions under either 1927 or the court's inherent authority is a finding that there was bad faith, and there was simply no bad faith in this case at all. Mr. Bultax, in response to the order to show cause, submitted a declaration from attorney Michael Panzer who outlined that this was a tool that had been used by himself in other cases similar to this, and that it had been discussed amongst the criminal defense bar at a national level as a tool of obtaining additional information. So by that declaration alone, there was information that this had been done before, that it had been successful before, and it was not intended to harass in any way, shape, or form. Additionally, the Ninth Circuit has previously noted that there's no Supreme Court case specifically on this point, and that is how do you interact with a state law privilege, attorney-client privilege, and a defendant's Sixth Amendment right of confronting the witness. And this leads into the second point, which is that the district court did not properly rule on the motion to quash. Had the district court properly ruled on the motion to quash, it would have heard the matter in camera, looked at the documents, and determined whether or not any of the documents were subject to any sort of privilege, and that was simply not done in this matter. Mr. Garrison, the attorney for the cooperating co-defendant, simply asserted a blanket privilege, which is disfavored in this district as well. So there were procedural errors as well in terms of not allowing Mr. Bultaks a reasonable opportunity to respond to the arguments. Was the subpoena overbroad? I don't think so, Your Honor. The district court found so, but I completely disagree, and that's part of the reason we're here now. The subpoena requested documents that were specific to a debrief with the U.S. attorney, with his client, and we even gave them the date. We were not looking at anything other than documents relating to one debrief. At the time the subpoena was issued, no documents had been produced to Mr. Bultaks from the U.S. attorney, despite the fact that the Jenks deadline had already passed. I wanted to clarify one point. The appellant's reply brief states it was unknown at the time the subpoena was issued whether or not there were documents. It was known that there would be notes from the FBI agent, but those notes had not yet been produced, despite the fact that the Jenks deadline passed. So the subpoena was narrowly tailored. It requested the smallest portion of the documents possible and was requested at a time when there was a reasonable belief that no other documents would be forthcoming from the U.S. attorney's office. Mr. Bultaks had an ethical obligation to investigate this case to try to find out what the cooperating co-defendant's trial testimony would be, and the only way at that point to do so would be to request documents from the cooperating co-defendant's attorney. In addition, there is simply a public policy argument to be made here that sanctions should be narrowly construed so as not to strifle the enthusiasm or chilly creativity that is inherent in the law. Defense counsel needs some liberty to be able to pursue new avenues of obtaining information. This was an avenue that was tried and tested, and other attorneys had used the same method, so there was a good faith basis for doing so. To issue a motion to quash and then impose sanctions at that point would simply have a stifling effect. Defense counsel should fear if they issue a subpoena and then a motion to quash is upheld or granted, that sanctions would then be issued. I'd like to reserve the balance of the time for any rebuttal. Thank you. Mark Rahe again for the United States. Your Honors, the district court did not abuse its discretion in finding sanctionable conduct in this case. One of the first points I'd like to really try to emphasize here today, when one reads the briefing on appeal, it makes it sound like the only thing that the defendant ever wanted were documents. And even then, only documents that somehow verbatim set down exactly what Ms. Kelly said. But when you look at actually the full record, that is not the case. In fact, I would submit a point to the court's attention. First of all, the subpoena itself wasn't just for documents. It called Mr. Garrison to be ready to come testify. And in a letter sent on the same date, it's a supplemental excerpt of record, pages 23, and then it goes on to the top of 24. This is the contemporaneous explanation that Mr. Bultek gave for issuing the subpoena. And I want you to see where in this list documents comes in. First sentence, he will possibly be called to testify about the exposure of his client under the plea agreement if she doesn't cooperate and the cooperation will get her a recommendation for the government for less time. Second sentence, he will be called if his client denies that she knows her exposure under the sentencing guidelines without cooperation under her plea agreement and the benefit that she can receive from cooperation. And finally, the last sentence, he will also possibly be called to testify about what his client said during the debrief session with the AUSA. We would submit from that, and if this court reviews the August 29, 2013 hearing of the motion to cloche, the overwhelming majority of it has nothing to do with documents. It's Mr. Bultek basically saying, I want the attorney of the co-defendant to be on call to impeach her if she denies knowing either A, her exposure, or B, the benefits. As Mr. Garrison pointed out in that hearing, how else is he supposed to do that without having to divulge either attorney-client privilege matter or at least things clearly covered by the duty of confidentiality and duty of loyalty? Okay, suppose during the debrief, I'm not speaking to the likeliness of this, but suppose during the debrief the discussion got very specific with the AUSA as to what recommendations might be expected from the government with regard to sentence. And this happens in a room that's not limited to the witness and her counsel, so that there would not necessarily be a protective shield over the discussion just between the two of them. And so you go on to trial, and I didn't practice in the criminal field, but I've seen enough cases to know that sometimes witnesses are pretty unspecific with regard to what they think is going to happen as a result of the cooperation, and she hems and haws and says she doesn't really know. Isn't the potential there for the attorney to be able to testify as to a non-privileged conversation where the AUSA had given more specific direction or advice or guidance to the witness as to what the benefit of cooperation might be? Perhaps in theory, Your Honor, but I would say what's the most likely realistic way that would be effected or effectuated? You know, he needs the attorney, Mr. Garrison, to make recourse to his notes. It's not even just the attorney-client. A lot of that's work product. I mean, when attorneys choose to write in their notes various things that their defendants say, you could say that that itself is putting more emphasis, more importance. It's reflecting their mental process. I mean, that's why I'm saying I guess in some absolute vacuum, it's possible there might be some relevance to that, but my comeback is that the reality is, and this is why the district court did not abuse its broad discretion in saying, well, there's no way you could do that without going into vital areas, and even besides the attorney-client privilege or the work product doctrine, the public policy counts, I think, far stronger this way. I mean, duty of loyalty, duty of confidentiality. I would be curious to see, you know, how Mr. Bultax would feel if the shoes were reversed, if he represented a cooperating defendant. Well, criminal defendants frequently, or the defense counsel have the problem because they have to advocate for that client, even though we have federal defenders here all the time that are arguing in a sense contrary to greater interest because their obligation is to their client. So I can understand where Mr. Bultax may not want to go into the next meeting of criminal defense counsel in San Diego, having served this subpoena, but I can also understand his argument that, gee, it's important to me to impeach this witness by trying to demonstrate that she gets enormous benefits from cooperating by saying what she thinks the government wants to hear, and how else am I going to do that if I can't get the chapter and verse and what the benefit is and I can't be confident that she's going to give it to me. So somebody in his position in the argument has suggested there are other alternatives, and I'm not really sure what the other alternatives are. How else would you prove what he needs to prove? But they did lay it out. The district court said, you know, first of all, the plea agreement, the addendum, the cooperation, and also there were FBI agent notes. That's what I was going to ask. Are you saying that they can only rely on the FBI's notes as being accurate and they can't challenge that? Well, no, they can challenge that, but what we're saying is that they're messing up. If they don't think the FBI, I mean, God forbid, would exaggerate or not say things totally accurately or be aware of what the notes should contain, that they're stuck with that, and therefore that's a reason that they shouldn't pursue if there is another possible vehicle. I mean, I don't understand the relevance of saying, well, just rely on what the DA says or just rely on what the police say or just rely on what the FBI says. Well, but there are limits to it, too. You can't get into Mr. Garrison's head and say, hey, what did you tell your client a week ago before she tested you? That's a different question. The question was, what are the alternatives? And I must say I was struck by the idea that the reasonable alternative to finding out, I'm not saying he can find out, but that there's an alternative to finding out because you have the FBI's word. That seems to me an odd argument. I mean, I, like Judge Clifton, have seen lots of cases where the real issue is what kind of promise was made to the witness. And you don't always get the truth. And sometimes it's reversed because it's clear that witnesses and confidential informants even more so. And it's very hard. You're right. It's very hard to get into what's actually said when a promise is made to a witness and whether that's something that could affect the witness's credibility, testimony. And it's very important to show whether the witness's testimony, not only whether the witness is affected by it, but whether they're telling the truth. Sure. And how do you find out whether they're telling the truth when all you can see is what the government's version of the case, of the deal, was? Let's just say I agree with that wholeheartedly. We have to look, too, at why we're here in this specific context. This is all a wonderful debate. If this is how it proceeded is one thing. But what did the defendant do? The law is clear that a subpoena is not meant to be a fishing expedition. It's not meant to be a discovery device. He didn't wait. His entire premise, when you read that August 29 hearing, he somehow assumed the co-defendant was going to be the worst liar in history. He assumed she was going to deny everything about her exposure, about her cooperation. In point of fact, supplemental excerpt to record, I believe 615 to 622, she ended up agreeing with everything he said. Let's assume a situation where she did turn out to be a liar. Maybe that would have been the time for him to pursue the subpoena. But instead, he does this four days before the eve of trial. He sends it to a cooperating defendant. The district court had to then, Mr. Garrison had to spend the very next day, at least four or five hours, filing a briefing. The court had to hold a hearing on this. Why? What was the rush? I don't understand. Trial. Trial started the next Tuesday. So couldn't the motion to quash be made after the trial started? Maybe when the witness came and testified and said everything that they would have expected, there wouldn't have been any need to have Mr. Garrison testify or try to get him to testify. Well, that's my point, too. Then why couldn't he wait until then? It's kind of a blunt object to use a preemptive subpoena. So what? Why does that show he was trying to persecute this lawyer or witness or he was acting with his desire to do evil? Well, it doesn't have to rise to that level, Your Honor. It just has to multiply vexatiously the proceedings. He's been around for 30 years. You know, and when he decided... He found out that this is a very serious kind of problem and you can't... And by the way, I want to... You know, maybe you should try a different tactic. And maybe, you know, there are some exceptions. We don't know what they are. But to the word product rule, there are some. Maybe try. Maybe this is something that at least the affidavit defense attorneys have talked about as a possible way to try to do things. So you send the subpoena. You know, the lawyer is going to be there anyway. Maybe he could have waited for the subpoena. I don't see what the evil is in having sent the subpoena when he realized he wasn't getting the FBI notes, which might have answered his question or might not. But I really have a hard time seeing... Not that there may be something wrong with what he did. That the subpoena may have been overbroad. The subpoena may have asked for things that he couldn't ultimately get once the hearing was held. But that this was done to harass and to... I don't remember what the other word is. But to vilify or whatever it was. To intimidate. Who is intimidated by this? Well, I think it doesn't have to necessarily be that, Your Honor. Of course, that's sanctionable conduct, too. But if it unreasonably multiplies the proceedings... I mean, it's kind of a thing. It's like trying to shoot a fly with a cannon to come up with a subpoena like this four days before trial when the parties are trying to devote their time to trial preparation. The bottom line is you and I can disagree reasonably here. It's an abusive discretion standard, too. Can it really be said that Judge Houston so came out of left field? Do you want to know what I think? No, I know what you know. But I have to reiterate what the legal standard is. We all have our cards to play. Right, right. And on that point, I want to say Mr. Bultaks is a fighter. This is kind of an awkward situation. I'm not trying to vilify him. I want that on the record. But I'm here. I have to defend this. You've got your job, too. Exactly. All I'm saying is because, as the district court found, I mean, you want to talk about a chilling effect. I know that everybody's pointing fingers at each other, but our position is just when you read the record, I mean, they're making it sound like it's just about documents now and this very interesting issue about work product. It was primarily to bring that defense lawyer to testify against his own client. In fact, Excerpt of Record 21, this is from the RICO record, but it's page 17 of that August 29 hearing. This is a quote from Mr. Bultaks. I'm asking for two things. Number one, what did you tell your client about the sentencing recommendations? That is classically attorney's advice that's protected. So our position is that the district court, it had inherent power. It had statutory power. It found conduct tantamount to bad faith, and I know I'm over, so I appreciate the court's indulgence unless there are any further questions the government would submit. Thank you very much. I'll be quick, Your Honors. If I could just rebut a couple of the points. I would say look at the subpoena to determine whether or not it is overbroad or not. Whether or not Mr. Garrison could have been called to testify, we'll never know. Whether or not there was anything that he could have talked about, we'll never know. But if so long as there is a single reason for the issuance of that subpoena to request these documents, then there's no bad faith. There's no grounds for sanctions. The government posits and the district court posits that there's alternative documents. Look at the plea agreement. Look at the cooperation addendum. Those are all entered into well before the debrief. We don't know what happened in that debrief. There is no possible way to find that out from either the cooperation agreement or the plea agreement. The fact that we can have this discussion is clear evidence that there is some movement in the law on this issue. We don't know whether or not the work product privilege would apply completely. We don't know if the attorney-client privilege would apply completely. The fact that we can have this discussion is clear evidence that there's no rule that bars subpoenaing a cooperating co-defendant's attorney. So there can't possibly be bad faith. So with that, Your Honors, unless you have any final questions, I would simply recommend that the court vacate the order imposing sanctions. Thank you very much. Thank you, counsel. Cases argued will be submitted. Both cases argued will be submitted.
judges: Reinhardt, Fernandez, Clifton